Filed 3/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERIK RODRIGUEZ, Plaintiff and Appellant, v. DEPARTMENT OF TRANSPORTATION, Defendant and Respondent. | F074027 (Super. Ct. No. CVM018047) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County. Donald J. Proietti, Judge.

Grassini, Wrinkle & Johnson, Roland G. Wrinkle and Marshall J. Shepardson for Plaintiff and Appellant.

Jeanne Scherer, Chief Counsel, Lauren A. Machado, Deputy Chief Counsel, Douglas L. Johnson, Assistant Chief Counsel, Bruce D. McGagin, Jeremy C. Thomas and Darren S. Nakashima, Deputy Counsel, for Defendant and Respondent.

-ooOoo-

While a public entity may be liable for injuries caused by dangerous conditions of public property (Gov. Code, §§ 830, 835),[1] the entity may avoid liability through the affirmative defense of design immunity (§ 830.6). (*Hampton v. County of San Diego*

---

[1] Statutory references are to the Government Code unless otherwise indicated.

(2015) 62 Cal.4th 340, 342.)  For design immunity to apply, the public entity " 'must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design.' " (*Ibid.*)

The present case involves the second element – discretionary approval.  Plaintiff Erik Rodriguez contends that a public official's approval of a design does not constitute an exercise of discretionary authority under section 830.6 if the official admits that he or she never actually considered whether to utilize the safety feature the plaintiff asserts would have prevented his or her injuries.  We reject Rodriguez's contention and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 29, 2013, Rodriguez was a passenger in a pickup truck that was traveling westbound on State Route 152 (SR 152) toward Los Banos when the truck ran off the road.  At the accident location, SR 152 is a four-lane divided expressway with the westbound direction consisting of two 12-foot wide lanes, an eight-foot wide paved right shoulder, and a metal beam guardrail to the right of the outside shoulder. After the truck passed Box Car Road, it veered from the number one (fast) lane, across the number two (slow) lane and paved shoulder, and off the road to the right.  The truck struck the end of the guardrail, went over an irrigation canal, and eventually came to rest, catching fire with the occupants still inside.  Rodriguez and the driver were injured, and another passenger was killed.

Rodriguez sued the Department of Transportation (Caltrans) for, among other things, maintaining an allegedly dangerous condition of public property.  (§ 835.)[2] Rodriguez alleged the guardrail was inadequate for its intended purpose, and the northern

---

**2** Rodriguez also alleged a cause of action for premises liability against Caltrans, and named San Luis Canal Company as an additional defendant.

2.

edge of the roadway and shoulder did not contain warning features, such as a "rumble strip," that would alert a driver who inadvertently veered onto the shoulder.

Caltrans moved for summary judgment or summary adjudication of issues on the grounds of, inter alia, design immunity under section 830.6 and the absence of evidence of a dangerous condition of public property.[3]  In support of the design immunity defense, Caltrans proferred design plans for SR 152 from 1992, 2002, and 2011 construction projects at the accident site; declarations of state engineers who explained their discretionary authority to approve those design plans and their actual approval of the plans; and declarations of other state engineers who confirmed the construction of SR 152 conformed to the approved plans.

The 1992 plans at the accident site involved installing a metal beam guardrail, widening the roadside to include an 8-foot paved shoulder and three feet of compacted shoulder backing that extended to the north end of the adjacent culvert, and flattening the existing roadside slope.  Licensed civil engineer Shira Rajendra, the Caltrans project engineer who drafted the 1992 plans, declared that he had discretionary authority to approve the plans, which he exercised by signing them, and he would not have approved the plans had they not met appropriate engineering standards.  With respect to the use of rumble strips, Rajendra declared: "I did not consider using rumble strips on the shoulders because at the time I approved the [1992] plans . . . , the use of rumble strips was not a common practice.  In 1992, there were no standards or policies which addressed or called for the design of shoulder rumble strips.  In 1992, the absence of shoulder rumble strips at the subject location met the then existing standards for roadways."

---

[3] In his opposition to the summary judgment motion, Rodriguez abandoned the other two grounds on which Caltrans brought the motion – that he could not prove that Caltrans failed to maintain the guardrail and that Caltrans could not be sued for premises liability.

3.

The resident engineer responsible for the construction of the 1992 plans, Michael Honma, declared the project was completed in accordance with the plans Rajendra approved, as evidenced by the "AS BUILT" stamp shown on the applicable plan sheets. Honma explained that rumble strips were not installed because they were not included in the 1992 plans.

The 2002 plans consisted of a pavement maintenance project and placement of a seal coat at the accident location, while the 2011 plans involved placing an overlay of the existing asphalt at several specified locations on SR 152, including the accident location. The project engineers for both projects, John Fukano and Jose Alicea II, declared that they exercised their discretionary authority in approving the plans, and that each plan did not include rumble strips because neither engineer received a directive from "District 10 Traffic Safety" to install the strips. The resident engineers on each plan project, Nomer Gutierrez and Sukhminder Deol, declared the projects were completed in according with the plans, as evidenced by the "AS BUILT" stamp shown on the applicable plan sheets, and the plans did not include the addition of rumble strips.

Caltrans's expert, consulting civil engineer Kim Nystrom, opined the absence of rumble strips in all of the plans was reasonable because there was no identified need for them. Caltrans did not widely use shoulder rumble strips in 1992, and they would not have been included in design plans unless there was a documented need for them, such as a history of vehicles running off the road. As for the later plans, the fact rumble strips were not included indicated the district's traffic safety branch did not recommend their use. According to Nystrom, the reasonableness of the plans was further supported by the fact there had not been any collisions at the accident site that involved vehicles departing the roadway to the right and striking either the guardrail or irrigation ditch.

Rodriguez opposed the motion, stating that he had elected to proceed only on the " 'absence of rumble strips' theory of 'dangerous condition' liability[,]" and he was not contesting the first or third elements of design immunity, namely the existence of a causal

4.

relationship and reasonableness of the design. On that basis, he asserted only two issues remained: (1) whether there had been discretionary approval of a design plan within the meaning of the statute; and (2) whether the failure to install rumble strips was a dangerous condition.

As to discretionary approval, Rodriguez did not dispute that any of the project engineers had discretionary authority to approve the 1992, 2002, or 2011 plans or that construction conformed to the approved designs. Instead, he argued Caltrans could not establish the discretionary approval element because Rajendra, who approved the 1992 plans, stated in his declaration that he did not consider placing rumble strips on the shoulders. Rodriguez also argued there was a triable issue of fact as to whether the failure to install rumble strips was a dangerous condition. In support, he proferred the declaration of retained expert Edward Ruzak, a civil and traffic engineer, who opined the absence of rumble strips constituted a dangerous condition, as well as evidence of other vehicle collisions. In reply, Caltrans lodged numerous objections to the evidence of other collisions and Ruzak's declaration.

The trial court granted summary judgment in Caltrans's favor on Rodriguez's dangerous condition of public property claim based on design immunity. The trial court noted that Rodriguez had conceded the first and third elements of design immunity, causation and reasonableness. As for the second element, the trial court found the undisputed material facts and supporting declarations of Caltrans engineers Rajendra, Fukano, and Alicea, established discretionary approval of the design plans at the accident location prior to construction, and the design plans approved in 1992, 2002, and 2011, included a paved shoulder and the absence of rumble strips. In addition, Nystrom's declaration provided substantial evidence supporting the reasonableness of the design plans. This shifted the burden to Rodriguez to show the existence of a triable issue of material fact, which Rodriguez failed to do, as he did not offer any admissible evidence demonstrating a triable issue of fact on the discretionary approval element. In light of its

ruling, the trial court declined to rule on whether the absence of rumble strips constituted a dangerous condition. The trial court also declined to rule on Caltrans's objections because Rodriguez's evidence was not material to the trial court's disposition of the motion, citing Code of Civil Procedure section 437c, subdivision (q). Judgment subsequently was entered in Caltrans's favor.

## DISCUSSION

I.     General Principles Governing Design Immunity

"Under the Government Claims Act, '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' " (*Hampton, supra,* 62 Cal.4th at p. 347.) "The Government Claims Act (Act) provides for direct liability on the part of public entities for injuries caused by maintaining dangerous conditions on their property when the condition 'created a reasonably foreseeable risk of the kind of injury which was incurred' and either an employer's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures." (*Id.* at pp. 347-348.)

"Even if a dangerous condition is demonstrated, a public entity may still prevail through a variety of statutory immunities, which the public entity may assert as an affirmative defense." (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 945 (*Gonzales*).) Here, we are concerned with the affirmative defense of design immunity under section 830.6.[4] As we stated above, the design immunity defense consists of three

---

[4] Section 830.6 provides, in relevant part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or

6.

elements the public entity must prove. We are concerned here with the second element – "discretionary approval of the plan or design prior to construction." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*).) "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Id.* at p. 69.)

"Design immunity is often raised on a motion for summary judgment or nonsuit, thereby enabling the trial court to find the defense established as a matter of law. [Citation.] 'The first two elements, causation and discretionary approval, may only be resolved as issues of law if the facts are undisputed." (*Gonzales, supra,* 6 Cal.App.5th at p. 946.)

"The third element, whether there is any substantial evidence of the reasonableness of the public entity's approval of the plan or design, is a question statutorily reserved for the court, not a jury." (*Gonzalez, supra,* 6 Cal.App.5th at p. 946.) The "trial or appellate court" is required to determine whether "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6; *Cornette*, *supra*, 26 Cal.4th at p. 72.) The evidence of reasonableness need not be undisputed, as the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).) Immunity must be granted as long as reasonable minds can differ concerning whether a design should have been approved; " '[t]he statute

other body or employee could have approved the plan or design or the standards therefor."

7.

does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances.' " (*Id.* at p. 941.)

Rodriguez appealed from the judgment entered after the trial court granted Caltrans's summary judgment motion. "A trial court properly grants a motion for summary judgment where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc. § 437c, subd. (c).) 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

II.     Discretionary Approval

The sole element of design immunity at issue here is discretionary approval. This " 'simply means approval in advance of construction by the legislative body or officer exercising discretionary authority.' [Citation.] A detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval." (*Grenier*, *supra*, 57 Cal.App.4th at p. 940.)

Here, Caltrans presented undisputed evidence that the 1992, 2002, and 2011 plans were designed and approved by Caltrans civil engineers, who had the discretionary authority to approve the plans. The plans consist of detailed drawings of the accident location, including the absence of rumble strips. This evidence demonstrates the discretionary approval element as a matter of law. (See, e.g., *Gonzales, supra,* 6 Cal.App.5th at p. 947 [discretionary approval established as a matter of law where

8.

professional engineering firm designed the plans, the city engineer with discretionary authority reviewed and approved the plans, which were also approved by the city council]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263 [evidence that an engineer employed by the public entity "reviewed and approved" construction plan established discretionary approval as a matter of law]; *Grenier, supra,* 57 Cal.App.4th at p. 941 [city established discretionary approval as a matter of law where the plans were prepared by a civil engineer and approved by another civil engineer].)

Rodriguez acknowledges this evidence would have been sufficient to establish discretionary approval if not for a statement by the Caltrans engineer who approved the 1992 plans, Rajendra, that he "did not consider using rumble strips on the shoulders." Citing to a sentence in *Grenier* that "[d]esign immunity does not immunize decisions which were not made," (*Grenier, supra,* 57 Cal.App.4th at p. 940) and the rationale behind design immunity, Rodriguez contends Caltrans cannot establish discretionary approval because the purported decision-maker never considered the particular feature or design element at issue, namely whether to install rumble strips. He asserts that if there was never a decision made concerning rumble strips, the quality of the deliberative process cannot be assessed.

Our Supreme Court interpreted the discretionary approval element of section 830.6 in *Hampton*. There, the plaintiffs contended that " 'approv[al]' by one 'exercising discretionary authority' (§ 830.6), requires an exercise of discretion in the sense of an exercise of judgment or choice, and . . . 'one cannot truly exercise judgment or make a choice without an awareness of what is to be judged or chosen.' " (*Hampton, supra,* 62 Cal.4th at p. 348.) Thus, the plaintiffs argued, " 'only an engineer who realizes a design does not conform to governing standards can truly make a discretionary decision to approve the design despite its nonconformity. By contrast, an engineer who approves a nonconforming design on the mistaken belief it conformed to governing standards has acted through inadvertence, not discretion.' " (*Id.* at pp. 348-349.)

9.

The Court rejected this contention, as such claims are considered under the reasonableness element of the statute. (*Hampton, supra,* 62 Cal.4th at p. 349.) Noting that the issue called for statutory interpretation, the Court explained that because the statute permits the discretionary approval element to be established by evidence of *either* appropriate discretionary approval *or* the plan conformed with previously approved standards,[5] evidence of an employee's awareness of and compliance with standards is not required to establish discretionary approval by the appropriate employee. (*Hampton, supra,* 62 Cal.4th at pp. 349, 350.)

The Court concluded the structure of the statute as a whole supported this interpretation. As the Court explained, the statute contains a three-part structure: "Under the statute, once causation and approval by an authorized employee or compliance with appropriately adopted standards is established, there is immunity" as long as the trial or appellate court determines there is substantial evidence that "a reasonable public employee could have adopted the plan or design or the standards therefor," or "a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (*Hampton, supra,* 62 Cal.4th at p. 350, citing § 830.6.) The three-part structure implies the court evaluates the wisdom of the design under the reasonableness element, and not under the element asking the jury to decide whether an employee vested with discretion to approve the plans actually approved them. (*Hampton, supra,* 62 Cal.4th at p. 350.)

The Court concluded that, when considered as a whole, it was "plain that section 830.6 was intended to avoid second-guessing the initial design decision adopted

---

[5] "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design . . . where such plan or design has been approved . . . by some . . . employee exercising discretionary authority to give such approval *or* where such plan or design is prepared in conformity with standards previously so approved . . . ." (§ 830.6, italics added).

by an employee vested with authority to approve it, except to the extent the court determines that the employee's approval of the design was unreasonable. It is at the reasonableness stage that the court would consider whether an employee, in either knowingly or unknowingly approving a design that deviates from applicable standards, adopted a design that a 'reasonable legislative body or other body or employee could have approved.' (§ 830.6)." (*Hampton, supra,* 62 Cal.4th at p. 351.)

In *Gonzales, supra,* 6 Cal.App.5th 929, we applied the rationale of *Hampton* to reject the plaintiffs' claim that to establish "approv[al]" by one "exercising discretionary authority" (§ 830.6), the public entity was required to present evidence of a " 'deliberat[ive] process that resulted in the exercise of judgment[.]' " (*Gonzales, supra,* 6 Cal.App.5th at p. 948.) There, the plaintiffs argued that without proof of a decision or explanation of what the public entity considered regarding the appropriateness of its plans, there was no evidence an actual discretionary decision was made and therefore no design immunity. (*Ibid.*) After a thorough analysis of the Court's decision in *Hampton*, we concluded the plaintiffs' interpretation of the statute – that proof of how a decision is made is necessary to establish the exercise of discretionary authority – is not supported by the statute's language or intent. (*Gonzales, supra,* 6 Cal.App.5th at pp. 952-953.) Specifically, we stated this interpretation conflicted with the statutory language, "as an exercise of 'discretionary authority to give such approval' does not entail a conscious weighing of design or plan options, but does require the employee to use discretion in *approving* the plan or design." (*Ibid.*)

The rationale of *Hampton* and *Gonzales* applies equally here. Both cases establish that under the language of section 830.6, all that is required to establish the discretionary approval element is evidence that an employee with discretionary authority approved the plan or design. Here, Caltrans presented such evidence. That the project engineer also stated he did not consider the use of rumble strips is irrelevant to the discretionary approval element. It is relevant, however, to the reasonableness element, as it is at that

stage the court considers whether it is reasonable that an employee, in approving a design without considering a particular design feature, adopted a design that "a reasonable . . . employee could have approved." (§ 830.6; *Hampton, supra,* 62 Cal.4th at p. 351.) As in *Hampton,* Rodriguez's "contrary interpretation would undermine the function of the statute's reasonableness element, a result that would be inconsistent with our duty to read the elements of the statute together, harmonizing and giving effect to them all." (*Hampton, supra,* 62 Cal.4th at p. 351.)

Rodriguez asserts *Hampton* has no application to this case, as it did not address whether the discretionary approval element "is satisfied by the approval of a plan which does not include an allegedly, necessary safety feature because the entity 'did not consider' using the feature one way or the other." While the plaintiffs' argument in *Hampton* was different, namely that the discretionary approval element could not be satisfied if the official who approved the design did not realize the design deviated from governing standards, the Court's statutory interpretation applies with equal force here, where the plaintiff contends this element cannot be satisfied where the official who approved the design admits he or she did not consider a particular design feature.

Rodriguez states that his " 'real complaint' is that the project engineer never made a decision one way or the other because he 'did not consider rumble strips' at all." He asserts the discretionary approval element does not "speak to, nor immunize, failures to decide, only decisions actually made." In his view, design immunity is vitiated if the employee with discretionary authority to approve a plan or design admits he or she failed to consider the particular feature or design, the absence of which a plaintiff later alleges made the property dangerous.

Rodriguez's view of what constitutes a design decision, however, is too narrow. Here, the design decision made in 1992 was to construct a bare paved shoulder at the accident location. The wisdom of this decision, and whether the project engineer should have considered whether to install rumble strips, is reviewed, not at the discretionary

12.

approval stage, but at the reasonableness stage. To conclude otherwise "would implicate the adequacy of the deliberative process at the discretionary approval stage and would lead a jury into just the sort of second-guessing concerning the wisdom of the design that the statute was intended to avoid." (*Hampton, supra,* 62 Cal.4th at p. 350.)

Rodriguez's reliance on *Cameron v. State of California* (1972) 7 Cal.3d 318 (*Cameron*), is misplaced. There, the plaintiffs alleged their injuries, incurred when they lost control of their car on a highway, were caused by a dangerous condition, namely uneven banking or "superelevation," on a curve in the road. (*Id.* at pp. 321-323.) Our Supreme Court reversed a judgment of nonsuit in favor of the State of California on its design immunity claim. (*Id.* at pp. 325-326.) The Court noted that while the State had produced evidence the highway design plans were prepared by appropriate county employees and approved by the county board of supervisors, the plaintiffs produced evidence the design plans contained no specification of superelevation; instead, they merely showed the course of the 60-foot right of way and the elevation of the white center stripe. (*Ibid.*) In that situation, design immunity did not attach because there was no evidence the superelevation was the result of, or conformed to, a design approved by the public entity vested with discretionary authority. (*Id.* at p. 326.) In so holding, the Court explained the policy behind design immunity would not be implicated because "there would be no reexamination of a discretionary decision . . . because there has been no such decision proved." (*Ibid.*)

Unlike the plan in *Cameron*, which did not include the alleged dangerous feature – uneven banking on a curve in the road – the plans here did include the alleged dangerous feature – a paved roadway shoulder absent rumble strips. Therefore, a decision was proved – to build the road with a bare shoulder. Caltrans presented evidence that the engineer with discretionary authority approved the plans and the shoulder was constructed in conformity with them. Thus, the evidence established the shoulder that was actually constructed was the result of or conformed to a design approved by the

13.

employee vested with discretionary authority, which provided a basis for concluding any liability for injuries caused by the absence of rumble strips was immunized by section 830.6.

This is consistent with another case Rodriguez relies on, *Grenier, supra,* 57 Cal.App.4th 931. While the appellate court in *Grenier* cited *Cameron* for the proposition that "[d]esign immunity does not immunize decisions which were not made[,]" it went on to state: "Thus, the injury-producing feature must have been a part of the plan approved by the governmental entity." (*Grenier, supra,* 57 Cal.App.4th at pp. 940-941, fn. omitted.) The appellate court concluded that both causation and discretionary approval were established by evidence that the plaintiff's claim of inadequate drainage relied on features that were part of the written plans prepared by a civil engineer and approved by the city. (*Id.* at p. 941.) Similarly here, the injury-producing feature, the absence of rumble strips, was part of the plans approved by Caltrans through its project engineer.

Citing *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, Rodriguez argues that because "section 830.6 is intended to immunize 'conscious design choices'[,]" immunity is defeated if it can be shown that a design feature that is absent from the plans was not considered. As we have already explained, however, *Hampton* instructs that "the discretionary approval element of design immunity asks whether a person vested with discretion to approve the plan did approve the plan or design that was built, and that the question whether it was wise to approve the plan is judged under the reasonableness element of the statute." (*Hampton, supra,* 62 Cal.4th at p. 357.) In view of *Hampton*, whether an omitted design feature is a "conscious design choice" is relevant, not to whether discretionary approval element is satisfied, but to whether the design was reasonable.

Finally, contrary to Rodriguez's assertion, we do not hold that a public entity is entitled to design immunity any time an employee with authority signs off on a plan and

another employee or engineer attests the plan is reasonable.  Instead, we merely hold where, as here, an employee with discretionary authority signs off on a plan that includes the injury-producing feature, and it was reasonable to do so, design immunity applies.  This is not a situation, as in *Castro v. City of Thousand Oaks* (2015) 239 Cal.App.4th 1451, where the injury-producing feature was not part of the approved project plans but was added after plan approval.  Instead, the injury-producing feature, the absence of rumble strips, was part of the plan.  Since Rodriguez concedes that Caltrans established both a causal relationship between the plans and the accident, and the reasonableness of those plans, we conclude the trial court properly determined Caltrans established, as a matter of law, the affirmative defense of design immunity.[6]

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Caltrans.

_____
HILL, P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
DETJEN, J.

---

[6] The parties also address an issue the trial court did not decide, namely whether SR 152 at the accident location constituted a dangerous condition.  We do not reach the issue, however, because even if there was a dangerous condition, Caltrans is immune from liability under section 830.6.

15.