Filed 2/4/21  Baker v. Yamaha Motor Corporation, USA CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KYLE BAKER, | |
| Plaintiff and Appellant, | E072089 |
| v. | (Super.Ct.No. MCC1500556) |
| YAMAHA MOTOR CORPORATION, USA, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.

Affirmed.

Pestotnik and Ross H. Hyslop for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Theane Evangelis, Timothy W. Loose, Daniel R. Adler and Emily R. Sauer for Defendant and Respondent.

Plaintiff and appellant Kyle Baker sued defendant and respondent Yamaha Motor Corporation, U.S.A. (Yamaha), a California corporation, alleging that its failure to furnish hanging price tags (hang tags) to its independent dealer Temecula Motorsports, Inc. (TMI)

1

in 2012, as required by Vehicle Code former section 24014,[1] subdivision (a), made it impossible for consumers to determine the true prices of its new, assembled motorcycles. Baker alleged causes of action for unfair competition (UCL; Bus. & Prof. Code, § 17200 et seq.), false advertising (FAL; Bus. & Prof. Code, § 17500 et seq.), and aiding and abetting. The trial court granted summary judgment in favor of Yamaha on the grounds Baker lacked standing because the undisputed evidence showed he was not harmed by the absence of the "Yamaha hang tags."

On appeal, Baker does not challenge the undisputed facts. Rather, he contends the court erred in (1) concluding he lacked standing by misinterpreting and narrowly applying the particularized interests protected by sections 24014 and 11712.5, (2) concluding there was no UCL violation because he had knowledge of Yamaha's MSRP,[2] (3) treating "standing" as an "element" of his claims, (4) concluding TMI's "disclosures" on its hang tag discharged Yamaha's duties under section 24014, (5) ignoring disputed material facts it deemed irrelevant, and (6) adjudicating his aiding and abetting claim in Yamaha's favor. We reject Baker's contentions and conclude, on the evidence presented, he failed to raise a triable issue of whether he was harmed by Yamaha's failure to furnish hang tags to TMI. We therefore affirm the judgment.

---

[1] For clarity, "section 24014" refers to Vehicle Code former section 24014 (as amend. by Stats. 1978, ch. 623, § 1). All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] Manufacturer's suggested retail price.

## I. PROCEDURAL BACKGROUND AND FACTS

Yamaha sells its products, including motorcycles, through independent dealers, such as TMI, who purchase these products at wholesale prices. The dealers sell the motorcycles to customers at individually negotiated prices. Yamaha does not receive information from dealers about the prices they charge in retail transactions, nor does it have any control over how much dealers charge their customers. Yamaha's dealer agreements require dealers to "'conduct and maintain at all times [their] sales and service operations in strict compliance with all applicable federal and state laws and regulations, county and city ordinances and regulations and any other applicable law, regulation or ordinance.'"

In 2012, the year relevant to this case, California law required dealers to attach hang tags (furnished by motorcycle manufacturers and approved by the Department of Motor Vehicles (DMV)), which indicate the "recommended retail price of the motorcycle" and the "recommended price for each accessory or item of optional equipment physically attached to the motorcycle at the time of its delivery to the dealer." (§ 24014, subd. (a)(1), (a)(2).)[3] On October 29, 2012, Yamaha sent a letter to its

---

[3] Section 24014 provided: "(a) No dealer shall sell, offer for sale, or display, any new, assembled motorcycle on its premises, unless there is securely attached to its handlebar a label, approved by the Department of Motor Vehicles, furnished by the manufacturer, on which the manufacturer shall clearly indicate the following: [¶] (1) The recommended retail price of the motorcycle. [¶] (2) The recommended price for each accessory or item of optional equipment physically attached to the motorcycle at the time of its delivery to the dealer. [¶] (b) The dealer shall clearly indicate on the label, furnished by the manufacturer, the following: [¶] (1) The amount charged, if any, over and above the suggested retail price for transportation to the dealership. [¶] (2) The

*[footnote continued on next page]*

California motorcycle dealers regarding the use of DMV-approved Yamaha hang tags.[4]

DMV's approval of Yamaha's hang tag format was effective December 21, 2012. Prior to October 2012, TMI prepared its own hang tags.

In June 2012, Baker shopped for a new Yamaha R6 motorcycle (R6) by researching on the Internet and comparing prices at Fun Bike Center and TMI. At TMI, the R6 had a TMI hang tag[5] that listed Yamaha's MSRP of $10,890, an amount Baker previously had seen on Yamaha's Web site. The hang tag also listed an additional dealer markup (ADM) of $1,760, bringing the total asking price to $12,650, exclusive of sales tax and applicable DMV fees. The ADM included freight ($300) and preparation ($1,460) charges. The bottom of the hang tag stated the total price "includes but is not limited to freight, assembly, service, dealer insurance, profit and overhead, flooring and other costs where applicable." The R6 had no accessories or optional equipment installed, so there was no price quoted for those items.

Baker understood that the price listed on the R6 hang tag was negotiable. Therefore, on June 29, 2012, he negotiated a total purchase price (before sales tax, registration and certain fees) of $10,225.06 or $2,424.94 less than the hang tag price of

---

amount charged, if any, for the assembly, preparation, or both, of the motorcycle. [¶] (3) The amount charged, if any, for each dealer added accessory or item of optional equipment. [¶] (4) The total recommended retail price of the vehicle which shall be the aggregate value of paragraphs (1) and (2) of subdivision (a) and paragraphs (1), (2) and (3) of subdivision (b)."

[4] See appendix A, *post*, Yamaha's hang tag template.

[5] See appendix B, *post*, TMI's hang tag for the R6 purchased by Baker.

4

$12,650 ($12,650-$2,424.94=$10,225.06). The total amount due for the R6 was $11,200. Baker's deal was $664.94 less than the R6's MSRP of $10,890 ($10,890-$664.94=$10,225.06). He is not aware of any dealer who would have sold him the 2012 R6 for an overall price of $11,200 or less.

On December 31, 2015, Baker filed a putative class action against TMI, asserting claims under California's UCL and FAL, and alleging that TMI imposed undisclosed fees on him and other customers.[6] On January 27, 2016, he added Yamaha as a defendant in his first amended complaint; however, his claims against Yamaha were for "injunctive relief only" and "without seeking class certification." Baker sought an injunction requiring Yamaha to stop its misleading advertising. Yamaha demurred on the ground Baker lacked standing. Subsequently, on February 2, 2018, Baker was granted leave to file his third amended complaint, which focused on the allegation that the R6 he purchased did not bear a hang tag furnished by Yamaha to TMI. Baker claims Yamaha failed to comply with sections 24014 and 11712.5.

On July 18, 2018, Yamaha moved for summary judgment. The trial court granted the motion on the ground Baker failed to establish the requisite harm to support his claims against Yamaha for violations of the UCL and FAL and for common law aiding and abetting. The court concluded the following: (1) "the only information that Yamaha would have been required to state on the hang tags was the MSRP," (2) Baker "read [TMI's] non-Yamaha hang tag and knew what the MSRP was," and (3) Baker would

---

[6] Baker settled his case against TMI, on a class basis, and TMI is not a party to this appeal.

5

have received "identical" information "[h]ad Yamaha provided hang tags" to TMI. The court explained: "Given that the information provided would have been identical, the undisputed evidence shows that plaintiff was not harmed by the absence of the Yamaha hang tags." Judgment was entered on November 29, 2018. Baker appeals.

## II. DISCUSSION

### A. Standard of Review.

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the initial burden of showing either that one or more elements of the cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) If the initial burden is met, the burden shifts to the plaintiff to show the existence of a triable issue of fact with respect to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Saelzler*, at p. 768.)

We review a summary judgment ruling de novo. (*Saelzler*, *supra*, 25 Cal.4th at p. 768.) "We must view the evidence submitted in connection with a motion for summary judgment in a light most favorable to the party opposing the motion and resolve 'any evidentiary doubts or ambiguities in plaintiff's favor.' [Citation.] We independently determine whether the record supports the trial court's conclusions that the asserted claims fail as a matter of law, and we are not bound by the trial court's stated reasoning or rationales." (*County of San Diego v. Superior Court* (2015) 242 Cal.App.4th 460, 467.)

6

*B.  The Trial Court Properly Concluded Baker Lacked Standing.*

Baker contends the trial court erroneously concluded that he lacked standing by misinterpreting and narrowly applying the particularized interests protected by sections 24014 and 11712.5.  We disagree.

*1.  Applicable law.*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'  ([Bus. & Prof. Code,] § 17200.)  Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'  [Citations.]  In service of that purpose, the Legislature framed the UCL's substantive provisions in '"broad, sweeping language"' [citations] and provided 'courts with broad equitable powers to remedy violations' [citation].  The state's false advertising law ([Bus. & Prof. Code,] § 17500 et seq.) is equally comprehensive within the narrower field of false and misleading advertising."  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).)

The substantive reach of these statutes is extensive; however, enforcement of their provisions "'is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition.'"  (*Kwikset*, *supra*, 51 Cal.4th at pp. 320-321; see Bus. & Prof. Code, §§ 17204, 17535.)  Thus, the standing requirement for these statutes is "substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries."  (*Kwikset*, at p. 324.)  Consequently, to satisfy the injury requirement under the UCL and

7

FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset*, at p. 322.) While it is unnecessary for a plaintiff to show the defendant's conduct was the "sole or even the decisive cause of the injury-producing conduct," he or she must show "'a causal connection or reliance on the alleged misrepresentation.'" (*Id*. at pp. 326-327.) If he or she fails to allege or prove a "personal, individualized loss of money or property in any nontrivial amount," then "standing is absent and the inquiry is complete." (*Id*. at p. 325.)

> 2. *Baker did not suffer an economic injury as a result of Yamaha's failure to provide a hang tag to TMI.*

In 2012, when Baker decided to purchase a Yamaha R6, he researched and compared prices on the Internet (on both Yamaha's and TMI's Web sites) and called Fun Bike Center to obtain information in order to negotiate a discounted price for the motorcycle. According to his research, he learned that freight and setup were not included in the MSRP. Later, when Baker went to TMI, he saw the dealer's hang tag on the R6 "hanging from the mirror or the handlebars," which included an MSRP of $10,890 and the ADM of $1,760. TMI's tag also provided that the purchase price "includes but is not limited to freight, assembly, service, dealer insurance, profit and overhead, flooring and other costs where applicable." Baker understood that the total price included the MSRP and the ADM. He also knew the price did not include taxes or applicable DMV

8

fees. He negotiated a deal that was $664.94 less than the MSRP, he was happy with the price he had negotiated, and he believed it was the best deal he could get from TMI.

Based on these undisputed facts, Baker suffered no economic injury from Yamaha's failure to provide TMI with a hang tag that listed Yamaha's MSRP. Baker disagrees and argues that the "trial court's construction and interpretation of the 'interest[s] legally protected' by sections 24014 and 11712.5[7] . . . was far too narrow" given their purpose of providing ""motorcycle buyers with information that is necessary to make a wise purchase."" However, even if we broadly interpreted these statutes, Baker is unable to show Yamaha's failure to provide a hang tag caused him to suffer an economic injury for purposes of standing. He obtained the MSRP from his Internet research prior to purchasing the R6. TMI's hang tag provided the same information Yamaha's hang tag would have provided. Baker successfully negotiated a price more than $600 below the MSRP, and he believed he received the best deal he could get from TMI. When a plaintiff gets the benefit of his bargain, he has no standing under the UCL and FAL. (See, e.g., *Bower v. AT&T Mobility*, *LLC* (2011) 196 Cal.App.4th 1545, 1555 [plaintiff had not alleged "that she could have obtained a bundled transaction for a new cellular telephone—the telephone that she selected—at a lower price from another source"]; *Hall v. Time Inc*. (2008) 158 Cal.App.4th 847, 854-855 [plaintiff suffered no injury, in fact, when he received and paid an invoice for a book before the expiration

---

**7** Section 11712.5 provides in relevant part: "It is unlawful and a violation of this code for a dealer issued a license pursuant to this article to sell, offer for sale, or display any new vehicle, as follows: [¶] (a) A new motorcycle unless there is securely attached thereto a statement as required by Section 24014."

9

period because he "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it"]; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1588, 1591 [plaintiffs were not injured by misrepresentations regarding licensure because they "received the benefit of their bargain, having obtained the bargained for [cellular phone] insurance at the bargained for price"].)

Because Baker failed to show that he suffered an economic loss due to Yamaha's failure to supply a hang tag with the R6's MSRP, the trial court properly found that he lacked standing to bring a claim against Yamaha under the UCL and FAL.

### 3. *Yamaha's statutory violation did not cause Baker's alleged injury.*

Baker asserts that he was harmed by Yamaha's non-compliance with Section 24014 and TMI's collection of money, based on its sale to him, because "money 'may have been acquired' by Yamaha 'by means of such unfair competition.'" More specifically, he argues that if TMI had used Yamaha's hang tag, which disclosed that transportation/freight was included, he believes it would have impacted his negotiations because he would never have agreed to pay a freight charge of $300. We are not persuaded.

To begin, as Yamaha points out, TMI's allegedly improper dealer-imposed fees have nothing to do with Yamaha. The fees were imposed at TMI's sole discretion and were allowed by law. (§ 24014, subd. (b)(1), (b)(2).) Likewise, Baker's reliance on section 24014 to create standing for his claims against Yamaha is misplaced. Although Baker argues section 24014 "imposes *shared obligations* on both *manufacturers* and

10

*dealers* of new, assembled motorcycles," the language of the statute is directed at dealers, i.e., "No *dealer* shall sell . . . any new, assembled motorcycle . . . unless there is securely attached to its handlebar a label, approved by the [DMV], furnished by the manufacturer . . . ." (§ 24014, subd. (a), italics added.) Thus, while hang tags should be provided by the manufacturer, the statute's mandatory provisions are aimed at dealers. Since Yamaha is not in violation of section 24014, Baker may not state a cause of action under the UCL's unlawful prong. (*Graham v. Bank of America*, *N.A.* (2014) 226 Cal.App.4th 594, 610 ["A 'violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'"]

Next, we note that Baker does not dispute the fact that the dealer hang tag on his R6 correctly listed Yamaha's MSRP. It also listed the ADM cost and noted that the dealer's asking price "includes but is not limited to freight, assembly, service, dealer insurance, profit and overhead, flooring and other costs where applicable." Baker offers no objection to the information contained on TMI's hang tag. Rather, he focuses on the fees (ADM) that TMI imposed on top of the MSRP, namely freight. But, according to the language in section 24014, subdivision (b)(1) and (b)(2), TMI was *required* to indicate the amount it was charging "over and above the suggested retail price" for transportation and "preparation." That is precisely what TMI did by listing the ADM in the amount of $1,760.

Nonetheless, Baker references the language on a blank template of a Yamaha hang tag that was created and used after he purchased his motorcycle in June 2012, and asserts the MSRP of $10,800 for his R6 must have *included* freight, a fact of which he was not

aware.  The blank template of Yamaha's hang tag includes the following language:  "The Manufacturer's Suggested Retail Price (MSRP) shown includes the manufacturer's transportation charges to the dealer but not tax or title.  Dealer prices may vary."  However, it also includes line items for "Charge by Dealer for Transportation to Dealership" and "Dealer's Assembly & Preparation Charges," in addition to the line item for the MSRP.  It does not refer to any motorcycle model or contain any pricing information.  We reject Baker's assertion that the MSRP for his R6 must have included freight.[8]  We conclude the assertion is based on pure speculation that Yamaha's post-June 2012 hang tags may be applied to his purchase.  They may not.  More importantly, the law allows for dealers to impose fees for legitimate freight and preparation costs, over and above the MSRP.  (§ 24014, subd. (b)(1), (b)(2).)

In short, since TMI's hang tag provided the information required by section 24014, Baker cannot show he was harmed by Yamaha's failure to provide a hang tag with the same information.

*C.  Baker's Attempt to Eliminate Standing Fails.*

Unable to overcome the basic fact that he has not suffered any economic damages, Baker raises several arguments to eliminate the standing requirement.  Each fails.

---

[8]  Even if the MSRP of $10,890 included freight costs of $300, Baker negotiated a total price, including freight costs, of $10,225.06, an amount less than Yamaha's MSRP.  Thus, Baker did not pay any freight costs over and above the MSRP.

12

*1. Proof of a violation of a predicate statute is not enough to support a UCL violation under the unlawful prong.*

Baker contends Yamaha's violation of section 24014 proves a violation of the UCL regardless of his knowledge of Yamaha's MSRP. Not so. Courts have consistently held that in addition to proving a violation of the predicate statute, a plaintiff must prove an economic injury as a result of the defendant's unlawful conduct.[9] (*Kwikset*, *supra*, 51 Cal.4th at p. 322; *Veera v. Banana Republic*, *LLC* (2016) 6 Cal.App.5th 907, 919 [A consumer must show reliance in order to proceed with a claim under the UCL's unlawful prong.]; *Moran v. Prime Healthcare Management*, *Inc.* (2016) 3 Cal.App.5th 1131, 1143 [To support a private action under the UCL, a plaintiff needs to show standing by establishing an economic injury that was caused by the "'the unfair business practice or false advertising that is the gravamen of the claim.'"]; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1355 [To satisfy causation under the UCL's unlawful prong, a plaintiff must show actual reliance.].)

Baker's reliance on *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89 (*Medrazo I*) and *Medrazo v. Honda of North Hollywood* (2012)

---

[9] Although Baker primarily focuses "on the UCL's 'unlawful' prong," he notes that the UCL "has four 'prongs' – 'unlawful,' 'unfair,' 'fraudulent,' and 'violative of the FAL.'" However, he only makes a passing reference to the other three prongs without offering an analysis of how Yamaha violated them. Baker has therefore forfeited any claims on the other three prongs. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 [An appellant has the burden of overcoming the presumption that a judgment is correct by presenting "an analysis of the facts and legal authority on each point made," and by supporting the "arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited."])

205 Cal.App.4th 1 (*Medrazo II*), overruled in part in *Veera v. Banana Republic, LLC*, *supra*, 6 Cal.App.5th at p. 919 [*Medrazo II* went too far in stating reliance was not required in a UCL action premised on a fraud theory], is misplaced. First, the defendant in both *Medrazo I* and *Medrazo II* was a dealer, not a manufacturer. (*Medrazo I*, at pp. 92-93; *Medrazo II*, at pp. 4-5.) Second, Medrazo's economic injury under the UCL was based on her purchase of a motorcycle from a dealer who failed to supply *any* hang tag. (*Medrazo I*, at p. 93; *Medrazo II*, at pp. 4-5.) Under Medrazo's theory, the dealer violated sections 24014 and 11712.5 by selling motorcycles without the proper hang tag attached. (*Medrazo I*, at p. 93.) In *Medrazo II*, the court held that the plaintiff sufficiently established that she "suffered a concrete, particularized, and actual invasion of an interest legally protected by section 11712.5 and section 24014, i.e., the disclosure—*before a decision to purchase a specific motorcycle is made*—of the MSRP and any dealer-added charges for all new motorcycles offered for sale. . . . [¶] [And, she] also presented evidence of an economic injury caused by the alleged unfair competition. She testified that she made the first two months' payments, and owes more than $12,000 on a motorcycle that [the dealer] allegedly was not legally allowed to sell (or at least was not allowed to sell at the price for which it was sold) because it failed to disclose the dealer-added charges on a hanger tag attached to the motorcycle." (*Medrazo II*, at p. 13.)

Here, in contrast, Baker's claims are against the manufacturer, not the dealer. Baker was provided a hang tag, which provided the correct MSRP, identified the ADM, and stated the total price "includes but is not limited to freight, assembly, service, dealer

14

insurance, profit and overhead, flooring and other costs where applicable." Moreover, Baker negotiated a price less than the dealer's advertised price and Yamaha's MSRP. Baker therefore has no economic injury to claim. (*Kwikset*, *supra*, 51 Cal.4th at p. 322.)

2. *Yamaha's motion for summary judgment was properly granted on the grounds Baker lacked standing.*

According to Baker, since standing is merely a threshold issue, rather than an element of his claims, Yamaha's motion for summary judgment failed to shift the burden to him, and the trial court should have denied Yamaha's motion—without even considering Baker's evidence. We disagree.

The threshold issue of standing, i.e., the right to make a legal claim, is a question of law, particularly where it depends on statutory provisions conferring standing. (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1143 [We review de novo issues of standing, particularly those dependent upon a statutory authority to sue.]; see *T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1433 ["The interpretation of statutory provisions bearing on the standing issue is a question of law."].) A defendant may defeat an action on a motion for summary judgment without attacking each cause of action separately by showing the action has no merit because the plaintiff lacks standing. (See, e.g., *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 736 [A defendant may defeat an action on a motion for summary judgment without attacking each cause of action separately by showing the action has no merit because the plaintiff lacks standing.]; *Scott v. Thompson* (2010) 184 Cal.App.4th 1506, 1510 ["Lack of standing is a fatal jurisdictional defect that requires judgment against the plaintiff."]; *People v. $ 28,500*

15

*United States Currency* (1996) 51 Cal.App.4th 447, 465-467 [summary judgment on standing in civil forfeiture action].)  Here, because Yamaha demonstrated Baker's lack of standing, it was not required to attack each cause of action separately.

　　　　*3. The trial court did not conclude that TMI's hang tag discharged Yamaha's duties under section 24014.*

　　Baker contends the trial court effectively granted summary judgment to Yamaha on a substantial compliance theory by concluding the *dealer's* disclosures adequately informed him about the motorcycle's price, even though Yamaha as the *manufacturer* had not made any statutory disclosures.  This contention is a red herring.  As Yamaha notes, Baker never made such a claim to the trial court, and the court never considered it.  Rather, the court found that Baker was not harmed by the absence of the Yamaha hang tag because he had the same information from Yamaha as he had from TMI.  Because Baker was not harmed, he lacked "standing to assert the UCL and FAL claims."  (See *Kwikset*, *supra*, 51 Cal.4th at pp. 322-323.)  Whether Yamaha did or did not substantially comply with section 24014 is irrelevant.

　　　　*4. The trial court correctly concluded Baker's evidence was not material to the disposition of the motion.*

　　Baker faults the trial court for cherry-picking the undisputed material facts and ignoring his evidence in support of its decision.  He asserts the court had no discretion to limit its analysis to certain undisputed facts identified by Yamaha, ignore his proffered evidence (*Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020)

16

49 Cal.App.5th 520-522) or refuse to rule on his objections to evidence the court deemed irrelevant.[10] We reject his assertion.

Code of Civil Procedure section 437c, subdivision (c), obliges trial courts to consider "all . . . papers submitted" in ruling on the motion, and states: "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ." While the trial court must consider all the evidence, it need not address every fact identified in the parties' separate statement of "material" facts. (*Eddins v. Redstone* (2005) 134 Cal.App.4th 290, 318 [The trial court cannot be expected to address expressly every piece of evidence contained in a voluminous record, much less address evidentiary items on which a party has not relied to create a disputed issue of material fact.].)

Code of Civil Procedure section 437c, subdivision (q), provides that "[i]n granting . . . a motion for summary judgment . . . , the court need rule only on those objections to evidence that it deems material to its disposition of the motion. Objections to evidence that are not ruled on for purposes of the motion shall be preserved for appellate review." (See *Rodriguez v. Department of Transportation* (2018) 21 Cal.App.5th 947, 953, 961 ["The trial court also declined to rule on [defendant's] objections because [plaintiff's] evidence was not material to the trial court's disposition

---

[10] In its ruling, the trial court stated, "The Court does not rule on any of plaintiff's evidentiary objections because none of the evidence to which they relate is relevant to the Court's analysis."

17

of the motion. . . ."].)  "[I]f the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal."  (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 534.)

Here, summary judgment was granted on the grounds Baker lacks standing because the undisputed evidence[11] shows he was not harmed by the absence of the Yamaha hang tags.  In reaching its decision, the trial court considered the evidence "it deem[ed] material to its disposition of the motion."  (Code Civ. Proc., § 437c, subd. (q).)  While Baker may disagree with the trial court's resolution of his evidentiary claims, he has not been prejudiced by any alleged procedural error.

     *5.  The trial court properly granted summary judgment in favor of Yamaha on Baker's common law aiding and abetting claim.*

Finally, Baker contends the trial court erred in adjudicating his common law aiding and abetting claim in Yamaha's favor because the common law claim does not

---

[11]  Citing Code of Civil Procedure section 2025.620, subdivision (b), Baker contends Yamaha's motion "improperly relied on its own deposition testimony as its sole support for those facts, even though C.C.P. § 2025.620(b) only permits an *adverse party* to use its deposition in support of its motion."  Not so.  Code of Civil Procedure section 437c, subdivision (b)(1), lists depositions among the documentation appropriate for use in support of a summary judgment motion.  Also, "[a]ny party may use a deposition . . . for any other purpose permitted by the Evidence Code."  (Code Civ. Proc., § 2025.620, subd (a); see *In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 143 ["[P]ursuant to section 2025.620 of the Code of Civil Procedure . . . '[a]t the trial or any other hearing in the action, any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition . . . so far as admissible under the rules of evidence applied as though the deponent were then present and testifying as a witness . . . .'"].)

18

impose standing requirements imposed on the UCL/FAL aiding and abetting claim, and there are triable issues of material fact as to whether Yamaha helped TMI commit a prohibited act. As we explain, we disagree.

Aiding and abetting, though like conspiracy, involves distinct elements. (*American Master Lease LLC v. Idanta Partners*, *Ltd.* (2014) 225 Cal.App.4th 1451, 1475.) "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846.) Technically, aiding and abetting is not a distinct cause of action. Rather, it is a theory of joint liability for a tort. (*Scott v. JPMorgan Chase Bank*, *N.A.* (2013) 214 Cal.App.4th 743, 762.) "'A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong.'" (*Berg & Berg Enterprises*, *LLC v. Sherwood Partners*, *Inc.* (2005) 131 Cal.App.4th 802, 823, fn. 10.)

To begin, Baker's common law aiding and abetting claim fails because Baker is unable to demonstrate an economic injury caused by Yamaha. (*American Master Lease LLC v. Idanta Partners*, *Ltd.*, *supra*, 225 Cal.App.4th at p. 1476 ["'[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered.'"].) As previously stated, Baker has not shown that he suffered any harm

19

caused by Yamaha's failure to provide a hang tag with his R6's MSRP: Baker paid more than $600 less than Yamaha's MSRP, and thousands of dollars less than TMI's asking price. Moreover, Baker is unable to show that Yamaha had knowledge of TMI's alleged wrongful conduct and provided substantial assistance in accomplishing a tortious result. (*Berg & Berg Enterprises*, *LLC v. Sherwood Partners*, *Inc.*, *supra*, 131 Cal.App.4th at p. 823, fn. 10 [Aiding and abetting "'necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'"].)

According to the evidence, Yamaha is a wholesale distributor that has no knowledge about, or control over, the prices its dealers charge in their retail transactions, including charges for freight and preparation. Yamaha also has no control over its dealers' use of Yamaha provided hang tags. The amount dealers charge for Yamaha products has no effect on the amount Yamaha receives because dealers are invoiced a specific amount for products ordered prior to their sale, and the pricing that Yamaha sets for its products is uniform across the entire country regardless of dealers' retail prices. Nonetheless, according to its dealer agreements, dealers, including TMI, are required to "'conduct and maintain at all times its sales and service operations in strict compliance with all applicable federal and state laws and regulations, county and city ordinances and regulations and any other applicable law, regulation or ordinance.'" From the evidence before the trial court, one cannot infer Yamaha had knowledge of TMI's conduct surrounding the sale of its R6 to Baker. Absent some indication of participation or support of wrongful conduct, there is no connection between Yamaha and TMI's alleged

20

wrongdoing. The only business practice Yamaha has engaged in is distributing its products in a lawful manner to licensed dealers. (See *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 982, 985 ["[E]vidence presented did not show that any defendant had actual knowledge that specific retailers were illegally supplying guns to the crime gun market or took any action to aid or encourage such activity."].)

Having reviewed the record de novo, we conclude Baker did not offer evidence that would show the existence of a triable issue of material fact as to Yamaha's knowledge and intent to support a claim for aiding and abetting. The trial court therefore did not err in granting summary judgment on this cause of action.

*D. Baker's Request for Leave to Locate a "Harmed" Class Member and File an Amended Complaint.*

In his reply brief, Baker requests leave to amend so that a substitute harmed plaintiff can replace him. He cites *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 (*Branick*), and *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1352, without any analysis of their legal authority. We note that in *Branick*, the case was on appeal when Proposition 64 was adopted (Gen. Elec. (Nov. 2, 2004)). Thus, the Court of Appeal allowed the matter to be remanded to determine whether the circumstances warranted granting leave to amend. (*Branick*, *supra*, 39 Cal.4th at pp. 242-244.) Unlike *Branick*, this case was filed several years after Proposition 64 was adopted. Moreover, Baker makes no representation that other harmed plaintiffs exist. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 273-274 [no abuse of discretion to deny leave to amend where there is no reasonable possibility that plaintiff

21

can cure the defect], overruled in part on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939.)  Accordingly, we deny the request.

## III.  DISPOSITION

The judgment is affirmed.  Yamaha to recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

SLOUGH
J.

FIELDS
J.



### YAMAHA

| | |
|---|---|
| **Model Code** | |
| **Manufacturer's Suggested Retail Price (MSRP)** | |
| **MSRP for Manufacturer-Installed Options** | $_____ |
| **Charge by Dealer for Transportation to Dealership** | $_____ |
| **Dealer's Assembly & Preparation Charges** | $_____ |
| **Price for Dealer-Installed Accessories** | |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| **Other** _____ | $_____ |
| **Total Recommended Retail Price** | $_____ |

The Manufacturer's Suggested Retail Price (MSRP) shown includes the manufacturer's transportation charges to the dealer but not tax or title. Dealer prices may vary.

YAMAHA-MOTOR.COM
Yamaha Customer Relations   (800) 962-7926
© Yamaha Motor Corporation, U.S.A.





### YAMAHA

| | |
|---|---|
| | |
| | |
| | $_____ |
| **Charge by Dealer for Transportation to Dealership** | $_____ |
| **Dealer's Assembly & Preparation Charges** | $_____ |
| **Price for Dealer-Installed Accessories** | |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| **Other** _____ | $_____ |
| **Total Recommended Retail Price** | $_____ |

The Manufacturer's Suggested Retail Price (MSRP) shown includes the manufacturer's transportation charges to the dealer but not tax or title. Dealer prices may vary.

YAMAHA-MOTOR.COM
Yamaha Customer Relations   (800) 962-7926
© Yamaha Motor Corporation, U.S.A.





EXHIBIT
Consisting of
Witness
Date
Tami LA, CSR 8716
For identification
Page(s)

TEMECULAMOTORSPORTS.COM    TEMECULAMOTORSPORTS.COM

**TEMECULA**
**MOTORSPORTS.COM**

YEAR: _____ 2012 _____

MAKE: _____ YAMAHA _____

MODEL: _____ YZFR6BCB _____

M.S.R.P.: $ _____ 10890.00 _____

A.D.M.: $ _____ 1760.00 _____

ACCESSORIES: $ _____

TOTAL: $ _____

WHICH INCLUDES BUT IS NOT LIMITED TO
FREIGHT, ASSEMBLY, SERVICE, DEALER INSUR-
ANCE, PROFIT AND OVERHEAD, FLOORING AND
OTHER COSTS WHERE APPLICABLE.

PRICES DO NOT INCLUDE VEHICLE INSURANCE.

TEMECULAMOTORSPORTS.COM    TEMECULAMOTORSPORTS.COM

TMS2000

EXHIBIT ___ For Identification
Consisting of ___ Page(s)
Witness _____
Date 4-14-17
Tami Le, CSR 8716